IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| MCGILLIS/ECKMAN INVESTMENTS - BILLINGS, LLC, a Utah limited liability company, | CV 10-26-BLG-RFC-CSO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |
| vs. | |
| SPORTSMAN'S WAREHOUSE, INC., a Utah Corporation, | |
| Defendant. | |

This action stems from a dispute regarding property owned by

Plaintiff McGillis/Eckman Investments – Billings, LLC

("McGillis/Eckman") and formerly leased to Defendant Sportsman's

Warehouse, Inc. ("SWI").  The action was originally filed in Montana's

Thirteenth Judicial District, Yellowstone County.  *Court Doc. 1-4 at 5.*

SWI removed the action to this Court pursuant to 28 U.S.C. §§ 1441

and 1452(a).

Currently pending are Plaintiff's Motion to Remand or

-1-

Alternatively to Abstain ("Remand Motion") *(Court Doc. 10)* and

Defendant's Motion to Transfer Venue or, in the alternative, To Stay

Action ("Transfer Motion") *(Court Doc. 6).*

## I.   <u>BACKGROUND</u>

McGillis/Eckman owns property located in Billings, Montana ("the

Property").  In March 2008 McGillis/Eckman and SWI entered into an

agreement ("the Lease") whereby McGillis/Eckman leased the Property

to SWI .  *Sportsman's Warehouse, Inc. Lease (Court Doc. 1-4) at 14-72.*[1]

The initial term of the lease expired on December 25, 2008.  *Id. at 15,*

*¶ 2.2 and at 73, ¶ 2.*

On March 21, 2009 ("the Petition Date"), SWI filed a Chapter 11

Bankruptcy Petition in the United States Bankruptcy Court for the

District of Delaware.  *2009 WL 2382625 at *2.*[2]  On April 28, 2009, the

parties extended the term of the lease to March 1, 2010, by an

Amendment to the Lease.  *Court Doc. 7-1 at 7, ¶ 20; Court Doc. 1-4 at*

---

[1]All page numbers refer to document pages in the Court's
electronic filing system.

[2]McGillis/Eckman represents that SWI filed its Chapter 11
Petition on March 20, 2009, but the record in the Bankruptcy Court
indicates that the Petition was filed on March 21, 2009.

*74.*

SWI reorganized as part of its Chapter 11 bankruptcy proceedings.  The reorganization allowed SWI to "close unprofitable stores by rejecting those leases, maintain its profitable stores by assuming those leases, raise new equity capital, and restructure its debts." *Court Doc. 7 at 6.*  On July 30, 2009, the Bankruptcy Court entered its "Order Under 11 U.S.C. §§ 105(a) and 365(a) and Fed. R. Bankr. P. 6006 (I) Authorizing Assumption of the Debtor's Unexpired Nonresidential Real Property Leases and (II) Fixing Cure Amounts" ("Assumption Order").  *Court Doc. 1-1.*  The Assumption Order authorized SWI to assume the Lease, including the April 28, 2009, Amendment, and fixed the default cure amount for the Lease at $0.00. *Court Doc. 1-1 at 3, 6.*  SWI's reorganization plan was confirmed by order of the Bankruptcy Court in Delaware on July 30, 2009 ("Confirmation Order").  *Court Doc. 1-2.*  In its Confirmation Order, the Bankruptcy Court "[n]otwithstanding confirmation of the Plan or the occurrence of the Effective Date, retain[ed] jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law ... ."  *Court Doc. 1-2 at 34-35.*  The

Bankruptcy Court also "retain[ed] exclusive jurisdiction to resolve any dispute arising from or relating to the ... [the Assumption Order]." *Court Doc. 1-1 at 4, ¶ 5.*

In this action, McGillis/Eckman seeks specific performance or, in the alternative, damages from SWI. *Court Doc. 1-4 at 5.* McGillis/Eckman alleges that "[t]he plain language of the provision of Section 45.1 [of the Lease], and the intent of the parties, was to require that [SWI] purchase the Property prior to the expiration of the Term upon the terms and conditions otherwise set forth in the Lease." *Id.* at 9-10, ¶ 18. McGillis/Eckman further alleges that SWI is in breach of this obligation to purchase the Property, and as a result, McGillis/Eckman is entitled to either specific performance by SWI's purchase of the Property for $7,525,552, or damages resulting from the breach, estimated at $3,000,000. *Id.* at 10-11, ¶¶ 21-23.

On March 17, 2010, shortly after its March 11, 2010, removal of this case, SWI filed a separate complaint in Delaware Bankruptcy Court seeking a declaration: (1) that the Lease "does not contain a valid and enforceable purchase obligation;" (2) in the alternative, that if the Lease does contain a purchase obligation, such obligation was satisfied

under SWI's reorganization plan; (3) that McGillis/Eckman's damages

claim is barred by its failure to object to the cure amount designated in

the Assumption Order; (4) that the Lease was unintentionally assumed

by SWI because its nature as a financing agreement was either

wrongfully concealed or not properly disclosed; or (5) that

McGillis/Eckman's claim lacks merit and its damages are incorrectly

calculated. *Court Doc. 7-1 at 2.* In the alternative, SWI seeks an order

from the Bankruptcy Court vacating its Assumption Order because the

Lease could not have been assumed under § 365 of the United States

Bankruptcy Code if it is an enforceable, mandatory purchase obligation.

*Id.*

## II.  PARTIES' ARGUMENTS

### A.    SWI's Arguments

Following removal, SWI filed a Motion to Transfer Venue to the

Bankruptcy Court in the District of Delaware or, in the alternative, To

Stay Action. *Court Doc. 6.* First, SWI argues that the case should be

transferred pursuant to 28 U.S.C. § 1412 because it arises in or is

related to the SWI bankruptcy proceedings. *Court Doc. 7 at 11.* SWI

contends that this case arises in its bankruptcy proceedings because it

concerns "how Plaintiff's alleged mandatory purchase obligation claim was classified and administered under the Assumption Order, Confirmation Order, and [Reorganization] Plan." *Id*. at 12. At a minimum, SWI contends that this action relates to its bankruptcy case because "an obligation to pay $7,552,525.00 [sic] would deplete SWI's financial resources and then some and negatively impact creditors, and could expose SWI to additional creditors seeking to re-litigate claims." *Id*. at 15.

SWI also argues that transfer is warranted pursuant to 28 U.S.C. § 1404(a). *Id*. at 17. SWI contends that transfer is appropriate because it will serve the convenience of the parties and witnesses and is in the interest of justice. *Id*.

As an alternative to transfer, SWI argues that the case should be stayed pending the resolution of the Delaware bankruptcy action. SWI argues that the Court has the inherent power to stay cases, and the balance of hardships and relevant factors weigh in favor of a stay. *Id*. at 18-20.

SWI argues that its transfer motion should be decided by this Court before McGillis/Eckman's remand motion. *Court Doc. 12 at 11*.

But, in any event, SWI contends that McGillis/Eckman's remand motion
should be denied because this case arises in or is related to the
Delaware bankruptcy proceeding thus this Court has subject matter
jurisdiction and the case was properly removed. *Id.* at 14, 23. SWI
further argues that abstention is not possible because there is no
pending parallel state court action in favor of which the Court could
abstain and, even if abstention were possible, the permissive abstention
factors weigh against abstention. *Id.* at 23-25.

### B.   McGillis/Eckman's Arguments

In support of its remand motion, McGillis/Eckman argues that
this Court lacks subject matter jurisdiction because this case does not
arise in, nor is it related to, the Delaware bankruptcy proceedings.
*Court Doc. 11 at 5.* McGillis/Eckman contends that this is a simple case
of contract interpretation that should be decided in Montana state
court. *Id.* McGillis/Eckman further argues that the principles of
equitable remand and abstention favor its motion. *Id.* at 14.
McGillis/Eckman contends that, in the interests of justice or comity for
state courts, this Court, under 28 U.S.C. §§ 1334(c)(1) and 1452(b), is
able to abstain from hearing or equitably remand a case arising in or

related to a Chapter 11 bankruptcy case.  *Id.*

McGillis/Eckman also argues that there is no "home-court presumption" in this case, and that its remand motion must be decided before SWI's transfer motion because the remand motion implicates this Court's jurisdiction.  *Court Doc. 15 at 6, 2-3.*

## III.  <u>DISCUSSION</u>

Both Parties argue that their respective motions should be first addressed.  Because McGillis/Eckman's remand motion raises jurisdictional issues, it must be considered first.  *See Smith v. Mail Boxes, Etc. USA, INC.*, 191 F. Supp. 2d 1155, 1157 (E.D. Cal. 2002) (jurisdictional issues should be resolved at the outset to facilitate litigation in the appropriate forum).  *See also McGuire v. U.S.*, 550 F.3d 903,  *Security Farms v. International Broth. of Teamsters,* 124 F.3d 999, 1009 n. 5 (9th Cir. 1997); Wright & Miller, *Federal Practice & Procedure* § 3739.

### A.  <u>McGillis/Eckman's Remand Motion</u>

SWI removed this action pursuant to 28 U.S.C. §§ 1441(a), 1452(a).  Section 1441(a) provides, in relevant part, that:

any civil action brought in a State court of which the district

> courts of the United States have original jurisdiction, may be
> removed by the defendant or the defendants, to the district court
> of the United States for the district and division embracing the
> place where such action is pending.

28 U.S.C. § 1441(a).  Section 1452(a) provides, in relevant part:

> A party may remove any claim or cause of action in a civil action
> other than a proceeding before the United States Tax Court or a
> civil action by a governmental unit to enforce such governmental
> unit's police or regulatory power, to the district court for the
> district where such civil action is pending, if such district court
> has jurisdiction of such claim or cause of action under section 1334
> of this title [Bankruptcy cases and proceedings].

28 U.S.C. § 1452(a).  SWI asserts that this Court has original

jurisdiction over this action pursuant to 28 U.S.C. § 1334(a) and (b), and

thus removal is proper under either § 1441(a) or § 1452(a).  *Court Doc. 1*

*at 5*.

Section1334(a) provides that the district courts of the United

States shall have "original and exclusive jurisdiction" of all cases under

title 11 – Bankruptcy.  Section 1334(b) provides that the district courts

shall have "original but not exclusive jurisdiction of all civil proceedings

arising under title 11, or arising in or related to cases under title 11."

In § 1334, "Congress intended to grant comprehensive jurisdiction to

the bankruptcy courts so that they might deal efficiently and

expeditiously with all matters connected with the bankruptcy estate[.]"
*Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (quoting *Pacor, Inc.
v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).  Under both § 1441 and
§ 1452 the removing party bears the burden with respect to establishing
jurisdiction.  *Kokkenen v. Guardian Life Ins. Co. of America*, 511 U.S.
375, 377 (1994) (internal citations omitted) (quoted in *Hunter v. Philip
Morris USA*, 582 F.3d 1039, 1042 (9th 2009)) (28 U.S.C. § 1441); *Lent v.
Chesterton*, 2009 WL 3561531 (N.D. Cal. Oct. 27, 2009) (28 U.S.C. §
1452).

SWI's arguments focus on the "arising in" and "related to"
jurisdiction granted by § 1334(b).  The "arising in" phrase has been
interpreted as follows:

> Proceedings "arising in" bankruptcy cases are generally referred
> to as "core" proceedings, and essentially are proceedings that
> would not exist outside of bankruptcy, such as "matters
> concerning the administration of the estate," "orders to turn over
> property of the estate," and "proceedings to determine, avoid, or
> recover preferences."

*Jones v. State Farm Mutual Auto Insurance Co.*, 410 B.R. 632, 637 (D.
Idaho 2009) (quoting *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394
F.3d 1189, 1193 (9th Cir. 2005)).  For determining the existence of

"related to" jurisdiction, the Ninth Circuit has adopted the "*Pacor* test".

*In re Feitz*, 852 F.2d 455, 457 (9th Cir. 1988) (citing *Pacor, Inc. v.*

*Higgins*, 743 F.2d at 994).  Under this traditional framework, the Court

asks whether:

> the outcome of the proceeding could conceivably have any effect on
> the estate being administered in bankruptcy.  Thus, the proceeding
> need not necessarily be against the debtor or against the debtor's
> property.  An action is related to bankruptcy if the outcome could
> alter the debtor's rights, liabilities, options, or freedom of action
> (either positively or negatively) and which in any way impacts
> upon the handling and administration of the bankruptcy estate.

*Pacor, Inc. v. Higgins*, 743 F.2d at 994, *overruled on other grounds by*

*Things Remembered, Inc. v. Petrarca,* 516 U.S. 124 (1995) (emphasis in

original) (quoted with approval in *In re Fietz*, 852 F.2d at 457).

The Ninth Circuit has, however, limited the *Pacor* test's

application in certain circumstances.   "[T]he Ninth Circuit has

indicated that in some contexts, such as during the postconfirmation

and postdischarge phase of a chapter 11 case, the 'related to' test is

more limited, with the test being 'whether there is a close nexus to the

bankruptcy plan or proceeding sufficient to uphold bankruptcy court

jurisdiction over the matter[.]'" *In re Crystal Cascades Civil, LLC*, 398

B.R. 23, 28 n. 6 (Bankr. D. Nev. 2008) (quoting *In re Pegasus Gold*

*Corp.*, 394 F.3d at 1194).  Thus, "matters affecting 'the interpretation, implementation, consummation, execution, or administration of the confirmed [reorganization] plan will typically have the requisite close nexus.'" *In re Pegasus Gold*, 394 F.3d at 1194 (quoting *In re Resorts Int'l, Inc.*, 372 F.3d 154, 167 (3d Cir. 2004)).

Here, SWI's Reorganization Plan was confirmed by the Delaware Bankruptcy Court on July 30, 2009.  SWI argues that any breach of the Lease occurred on December 25, 2008, preconfirmation.  On the other hand, McGillis/Eckman argues that the Lease was not breached until March 1, 2010, postconfirmation.  The Court need not determine when the breach occurred to decide the pending remand motion because it concludes that this action is related to the bankruptcy proceedings under either the pre- or postconfirmation tests.

Applying the narrower "close nexus" test, the Court concludes that this case is related to the Delaware bankruptcy case.  While this case was originally filed in the context of a state law contract dispute, the issues raised will require interpretation of the Assumption Order.  And the remedy requested by McGillis/Eckman likely will affect the implementation, consummation, and administration of the

-12-

Reorganization Plan.  While it is true, as Eckman/McGillis argues, that

there is no dispute regarding the assumption of the Lease in the

Assumption Order, it is also true that the validity and scope of that

assumption will be at issue in this case.  As SWI correctly notes, the law

provides that a debtor

> may not assume or assign any executory contract or unexpired
> lease of the debtor, whether or not such contract or lease prohibits
> or restricts assignment of rights or delegation of duties, if ... such
> contract is a contract to make a loan, or extend other debt
> financing or financial accommodations, to or for the benefit of the
> debtor ... [.]

11 U.S.C. § 365(c)(2).  Whether the Lease qualifies as one of the

contracts covered by § 365(c)(2) is a threshold question.  If the Lease is

covered by § 365(c)(2), it arguably could not have been assumed by SWI

in the bankruptcy proceeding.  Thus, interpretation of the Assumption

Order is required for the adjudication of McGillis/Eckman's claims.

This interpretation certainly may affect the implementation and

consummation of the Reorganization Plan.

Moreover, the attendant remedy sought by McGillis/Eckman from

SWI appears to be payment by SWI of up to $8,000,000.  If

McGillis/Eckman is successful, there will be a significant depletion in

SWI's assets.  Such depletion of assets will affect the implementation, consummation, and execution of the Reorganization Plan, and SWI's ability to satisfy other creditors may be impacted.  *See, e.g., In re Pegasus*, 394 F.3d at 1194.  Thus, the Court concludes that this action has the requisite close nexus to the pending Delaware bankruptcy proceedings.

In light of the foregoing, the Court also concludes that "the outcome of the proceeding could conceivably have [an] effect on the estate being administered in bankruptcy."  *See Jones*, 410 B.R. at 637-38 (emphasis removed).  Consequently, this case is related to SWI's bankruptcy proceedings, and this Court possesses subject matter jurisdiction under 28 U.S.C. § 1334(b).  McGillis/Eckman's motion to remand for lack of subject matter jurisdiction should be denied.

### B.   SWI Motion to Transfer

Having established jurisdiction over this action, the Court now turns to SWI's Transfer Motion.

SWI has moved to transfer pursuant to 28 U.S.C. § 1412[3] or 28

---

[3]28 U.S.C. § 1412 provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the

-14-

U.S.C. § 1404.[4]  Having already established that this case is related to

the Delaware bankruptcy case, § 1412 will be applied in considering the

Transfer Motion.  *Reid-Ashman Manufacturing, Inc. v. Swanson*

*Semiconductor Service*, 2008 WL 425638 at *1 (N.D. Cal. Feb. 14, 2008)

("Although some courts have held that § 1404 applies to related

proceedings, the majority of courts, including courts in this district,

have held that § 1412 applies to such proceedings.").

   As a general rule, transfer pursuant to § 1412 "carries a

presumption in favor of the court in which the debtor's bankruptcy case

is pending."  *Reid-Ashman*, 2008 WL 425638 at *1 (citing *SenoRx v.*

*Coudert Bros., LLP*, 2007 WL 2470125 at *1 (N.D. Cal. Aug. 27, 2007)).

McGillis/Eckman argues that the "home court" presumption does not

apply to postconfirmation claims, citing *In re Pegasus* as authority.

*Court Doc. 13 at 6.*  But *In re Pegasus* makes no mention of § 1412

transfers or the so-called "home court" presumption.  *See In re Pegasus*,

---

interest of justice or for the convenience of the parties."

   [4]28 U.S.C. § 1404(a) provides: "For the convenience of parties and
witnesses, in the interest of justice, a district court may transfer any
civil action to any other district or division where it might have been
brought."

394 F.3d 1189 (9th Cir. 2005).  Moreover, the Court has found no

authority supporting McGillis/Eckman's contention that the home court

presumption does not apply to postconfirmation § 1412 transfers.

Thus, the Court begins with a presumption in favor of transfer to

the Delaware Bankruptcy Court.  *See Hohl v. Bastian*, 279 B.R. 165,

178 (W.D.Pa. 2002).  The following factors are to be considered in

determining whether to grant a § 1412 transfer "in the interest of

justice":

> the variety of factors considered include the economics of estate
> administration, the presumption in favor of the "home court,"
> judicial efficiency, the ability to receive a fair trial, the state's
> interest in having local controversies decided within its borders by
> those familiar with its laws, the enforceability of the judgment,
> and plaintiff's original choice of forum.  *See In re Bruno's, Inc.*, 227
> B.R. [311,] 324-25 [(N.D. Ala. 1998)].  "[T]he most important
> consideration is whether the requested transfer would promote
> the economic and efficient administration of the estate."  *In re*
> *Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1247 (5th Cir.
> 1979).

*Reid-Ashman*, 2008 WL 425638 at *2 (quoting *SenoRx, LLP*, 2007 WL

2470125 at *1).  "The party moving for a transfer has the burden to

show by a preponderance of the evidence that transfer under § 1412 is

warranted."  *Creekridge Capital, LLC v. Louisiana Hosp. Center, LLC*,

410 B.R. 623, 629 (D. Minn. 2009).  But, "[u]ltimately, the decision to

transfer venue of a case under title 11 is committed to the discretion of the court." *Matter of Emerson Radio Corp.*, 173 B.R. 490, 495 (D. N.J. 1994), aff'd in *In re Emerson Radio Corp.*, 52 F.3d 50 (3rd Cir. 1995); 28 U.S.C. § 1412.

Analysis of the relevant factors weighs in favor of transfer.  First, contrary to McGillis/Eckman's contention that transfer to Delaware is unlikely to have any material impact on the administration of the estate (*Court Doc. 13 at 12*), resolution of McGillis/Eckman's claims will potentially have a significant impact on the bankruptcy estate. McGillis/Eckman seeks a minimum of three million dollars from SWI either in the form of damages, and up to eight million dollars for specific performance.  Such awards could significantly deplete the estate's resources.  Thus, the economics of estate administration are clearly implicated, and the first factor weighs in favor of transfer.

Second, the home court is the United States Bankruptcy Court for the District of Delaware.  This second factor also weighs in favor of transfer.

Third, judicial efficiency will be served by administering all claims against the bankruptcy estate in one forum, and the bankruptcy case

remains pending in Delaware.  Judicial efficiency is also served by

having the Delaware Bankruptcy Court interpret and administer its

own orders.  McGillis/Eckman's claims implicate the validity of the

Assumption Order with respect to the Lease which, in turn, impacts the

implementation of the Reorganization Plan.  The resolution of this case,

as discussed above, will also impact the administration of the

bankruptcy estate in general.  It will be most efficient for all issues

related to the bankruptcy proceeding to be adjudicated in one forum.

Therefore, judicial efficiency is served by transferring the case to

Delaware.

Fourth, having determined that this case is related to the

bankruptcy case, Montana's interest in having local controversies

decided locally is diminished.  At its core, this case implicates the

interpretation, implementation, and administration of the Delaware

Bankruptcy Court's orders and the Bankruptcy Code.  If the assumption

of the Lease is void, the Montana issues will be moot.  The Bankruptcy

Court is more familiar with the controlling bankruptcy law and orders.

Consequently, this factor is neutral.

The judgment will be enforceable whether issued by this Court or

the Delaware Bankruptcy Court.  The fifth factor is neutral.

Lastly, although § 1412 requires consideration of McGillis/Eckman's choice of forum, this factor alone is not sufficient to override the considerations above.  Consequently, the Court concludes that this action should be transferred to the United States Bankruptcy Court for the District of Delaware in the interest of justice.

The convenience of the parties is also considered in a § 1412 transfer motion, even when transfer is requested in the interest of justice.  *Reid-Ashman*, 2008 WL 425638 at *2.  In considering the convenience of the parties, the Court may consider the following factors:

> 1) location of the plaintiff and defendant; 2) ease of access to necessary proof; 3) convenience of witnesses; [4]) availability of subpoena power for the unwilling witnesses; and [5]) expenses related to obtaining witnesses.

*Id*.

The Court concludes that these factors also weigh in favor of transfer.  McGillis/Eckman is a Utah limited liability company and SWI is a Utah corporation.  Neither party is incorporated in Montana; it appears that neither party's principal place of business is in Montana.  Additionally, none of the relevant contracts were signed in Montana or

by people residing in Montana.  *See Court Doc. 5*.  As a result, the location of the Plaintiff and Defendant does not weigh in favor of or against transfer.  Second, SWI's Delaware bankruptcy counsel, likely witnesses, are located in Delaware.  *Court Doc. 7 at 17*.  Thus, the second, third, and fifth factors weigh in favor of transfer.  The fourth factor also weighs in favor of transfer, or, at a minimum, is neutral, because McGillis/Eckman has already appeared in the Delaware bankruptcy proceedings and therefore is subject to that Court's jurisdiction.  Moreover, any participants in the adjudication of this claim are not more easily within the subpoena power of the Montana courts than the Delaware Bankruptcy Court.  Consequently, this factor weighs in favor of transfer. As a result, the Court concludes that transfer is appropriate.

## IV.  <u>CONCLUSION</u>

In light of the foregoing,

IT IS RECOMMENDED that McGillis/Eckman's Motion to Remand for lack of subject matter jurisdiction (Court Doc. 10) be DENIED.

IT IS FURTHER RECOMMENDED that SWI's Motion to

Transfer Venue (Court Doc. 6) should be GRANTED, and this matter should be transferred to the United States District Court for the District of Delaware for referral to the United States Bankruptcy Court of said District pursuant to 28 U.S.C. § 157(a).

IT IS FURTHER RECOMMENDED that all other motions, whether made in the alternative or otherwise, should be DENIED, subject to refiling in the United States District Court for the District of Delaware.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of U.S. Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after receipt hereof, or objection is waived.

DATED this 30th day of June, 2010.

/s/ Carolyn S. Ostby
United States Magistrate Judge